## J. H. WILSON AND WIFE et al. v. C. J. LINEBERGER.

### *Specific Performance.*

1. Where a contract contains mutual and dependent covenants, specific performance cannot be decreed, unless the party seeking it alleges either that he has performed or is ready and willing to perform his part of the contract.

2. Where an administrator agreed with his co-administrator, who was also a distributee, that in consideration of the said distributee selling him a certain tract of land, he would pay therefor a certain price, and would also execute a mortgage to secure to the distributee whatever sum might be due to him from the estate of the intestate; *Held,* that specific performance will not be decreed when the complaint fails to state that the distributee has performed all of his covenants contained in said contract.

(*Hardy* v. *McKesson*, 6 Jones, 554; S. C., 7 Jones, 567; *Addington* v. *McDonnell*, 63 N. C., 389; *Wilson* v. *Lineberger*, 83 N. C., 416, cited and approved).

CIVIL ACTION, tried before *McKoy, Judge,* at Fall Term, 1884, of GASTON Superior Court.

His Honor gave judgment for the plaintiffs and the defendant appealed.

*Messrs. Geo. E. Wilson* and *Batchelor & Devereux,* for the plaintiffs.

*Messrs. W. P. Bynum* and *R. W. Sandifer,* for the defendant.

MERRIMON, J.   The plaintiffs brought this action to compel the defendant to specifically perform the agreement under seal, specified and set forth in the complaint.   In that agreement, the plaintiffs stipulated that the *feme* plaintiff would convey in fee to the defendant, by deed of bargain and sale, with covenants of general warranty and seisin, her undivided one-fourth interest in the large tract of land therein mentioned and described, for the several considerations therein specified, when the same should be paid and done as required by the terms of the agreement.   No definite time for the execution of the provisions of the agreement is specified, but it seems that it was to be done as soon as practicable.

The defendant, on his part, stipulated that he would pay to the plaintiffs, for the interest in the land so to be conveyed to him, $9,000.   Of this sum, he was to pay $6,000 at the time of the execution of the deed, and to execute to the plaintiffs his promissory note for the balance, $3,000, due two years next thereafter, bearing interest from date, payable annually, at the rate of eight *per centum per annum*, and to secure the same by a mortgage of his interest in the land, with power of sale in the plaintiffs, to be exercised in case he should fail to pay the interest as it came due, or the note at its maturity.   He further stipulated that an account of the partnership effects of the firm of Lineberger, Rhyne & Co. should be taken immediately, and that one-fourth of the manufactured goods, the raw cotton on hand, and of the rights and credits, should be delivered to the plaintiffs specified in the agreement.   It seems that the *feme* plaintiff, the defendant, and Rhyne composed that firm.

He further stipulated, that he, as co-administrator with the *feme* plaintiff of the estate of J. L. Lineberger, deceased (who was her former husband), would state and file immediately with the judge of probate of Gaston county, his account of his administration, and would, at the time of the execution of the deed to be executed by the *feme* plaintiff to the defendant, "turn over to her," his co-administrator," all the assets which may have or

should have come into his hands," as such administrator, and execute to the plaintiff his promissory note for such sum of money as might be found to be due on account of such assets, due two years next after the date of the agreement, bearing interest at the rate of eight *per centum per annum*, and to execute to the plaintiffs a mortgage of the same land to secure it.

The plaintiffs stipulated in this connection that when they received such assets, they would execute to the defendant a bond in the penal sum of $5,000 conditioned to indemnify him against loss or harm on account of anything done or that might be done by the *feme* plaintiff as administratrix.

The plaintiffs, while they allege and set forth in the complaint the whole of the agreement, of which the above is a summary, do not demand a specific performance of all its material provisions and stipulations; they demand only an account of the assets in the hands of the defendant as co-administrator with the *feme* plaintiff of the intestate, and such assets as ought to have come into his hands from sundry sources specified; that he execute his note for the money that may be found to be due for such assets to the plaintiff under the agreement; and that he execute to them a mortgage of the land mentioned to secure it.

This seems to us irregular. We can account for it only upon the supposition that the very intelligent counsel for the plaintiffs construed the agreement as containing two separate and distinct contracts, one in respect to land which the *feme* plaintiff agreed to sell to the defendant, and the other in respect to other matters, including that mentioned in the complaint. Such a view, in our judgment, is a serious misapprehension of the terms, proper scope, and effect of the agreement. It is one whole. It contains one contract, made up of sundry parts, containing mutual and dependent covenants, and it requires that several material things shall be done concurrently by the plaintiff and the defendant.

The agreement upon its face, in terms purports to be "this contract," as a whole, and "the consideration" is spoken of as one

and a whole. The plaintiffs covenant that the *feme* plaintiff will convey her one undivided fourth interest in the land mentioned in the agreement to the defendant for $9,000, to be paid by him as specified; but not for that alone and *when* that is paid, but *when* he shall do "also in compliance with the stipulations *hereinafter set forth*," which stipulations plainly refer, and can only refer, to the taking of the account of the partnership assets of the firm of Lineberger, Rhyne & Co., and the delivery of one-fourth thereof to the plaintiffs "within ninety days after the execution of the deed of conveyance by the said parties of the first part as aforesaid," and also to the ascertainment and payment in the way provided, to the plaintiffs, of the assets in the hands of the defendant, as the *feme* plaintiff's co-administrator. In a note at the end of the agreement, a part of the contract is referred to as "the above contract," thus designating it as a whole.

Besides, if the conveyance of the land by the *feme* plaintiff shall not be treated as the consideration for that part of the contract the plaintiffs seek to have specifically performed, then there would be no consideration appearing to support the latter—certainly no substantial consideration, such as would induce a court of equity to compel its specific performance. No other consideration is mentioned, and it must be taken that the defendant recognized and accepted it. It is scarcely probable that he intended to oblige himself to do things so important without a consideration.

The agreement under consideration is peculiar, and not very clearly and orderly explained in some respects, but we cannot doubt that the substance of it is, that the plaintiffs on their part covenanted to and with the defendant, that the *feme* plaintiff should convey her interest in the land mentioned in it, to the defendant, and would execute to him the penal bond mentioned within a reasonable time, in consideration of, and when the defendant should pay to the plaintiffs, $6,000, and secure to them $3,000 more as provided for, and should do the several other things agreed to be done by the defendant; and the defendant

on his part, covenanted to and with the plaintiffs,·that he would, within such reasonable time, pay the sum of money required to be paid, and secure other sums mentioned, ascertained and to be ascertained, and do the other things stipulated to be done by him, in consideration of the interest in the land so to be conveyed to him.

This being the proper construction, the plaintiff could not compel the defendants to specifically perform only a part of the contract particularly advantageous to them. It must be specifically performed as a whole and on both sides, or not at all, because the right is mutual, each is entitled to the benefit of it.

Moreover the covenants are mutual and dependent, and the principal acts to be done are concurrent, and the plaintiffs are not entitled to the relief demanded by them, until they aver and show their ability and readiness to perform the contract specifically on their part. Indeed, generally the plaintiff seeking the specific performance of a contract must aver and prove that he has performed his part of it, or his ability and readiness to do so. *Hardy* v. *McKesson,* 6 Jones Law, 554; the same case, 7 Jones Law, 567; *Addington* v. *McDonnell,* 63 N. C., 389; *Batten on Specific Performance,* 108.

The plaintiffs do not allege that they have performed their part of the contract, nor do they allege their ability and readiness to do so; on the contrary, as we have seen, without such allegation, they seek to have but a part of it specifically performed. This they cannot have, and for the reasons already stated.

They therefore fail to allege facts essential to entitle them to a mortgage of the land mentioned to secure the payment of the assets ascertained to be in the hands of the defendant as co-administrator with the *feme* plaintiff. As it does not appear upon the face of the complaint, or indeed at all, that the plaintiffs are entitled to have a mortgage of the land executed to them by the defendant under the contract, the Court could not in the exercise of its equitable jurisdiction, treat it as a mortgage and give effect to the *lis pendens,* notice of which was given as required

by the statute. It is obvious that the law of *lis pendens* does not apply, and cannot take effect, where the party suing fails to show himself entitled to the property in litigation, or the relief demanded in respect to it.

We think the Court erred in adjudging the judgment for the money ascertained to be due the plaintiffs, and from which there was no appeal, to be a lien by virtue of the *lis pendens*, upon the land described in the pleadings. It did not follow as a necessary consequence of the judgment for the money that the lien upon the land should be declared. The defendant chose to let that stand undisturbed; but he had the right to resist, as he did, that the plaintiffs had not, by the pleadings or otherwise, shown themselves entitled to the mortgage demanded, and to have the land sold by virtue of such right, and the proceeds of the sale applied to the satisfaction of the judgment not appealed from.

These views substantially harmonize with that expressed by us, when this case was before the court at a former term. While it was not then necessary to interpret the contract, the court suggested that the purpose was to have only a part of it specifically performed, and intimated strongly that the plaintiffs were not entitled to have such relief. Indeed, the action was treated as having for its real purpose, the settlement of the estate of the intestate of the defendant and the *feme* plaintiff.

In *Wilson* v. *Lineberger*, 88 N. C., 416, on page 437, the Chief-Justice said, "we have treated this action as intended in its general scope and aim, to effect a settlement of the intestate's estate in the defendant's hands, and wholly administered by him, in order to ascertain their amount, and recover the distributive shares therein accruing to the *feme* plaintiff and her infant child, of whom she is the guardian, and not as one merely to enforce the specific contract entered into between the associated representatives for an account and the payment over of the trust fund by one to the other. The settlement of the administration is an execution of part of the contract and both distributees are interested in the result. The infant distributee ought to be made a party to the

suit, and must be before any final decision is rendered. This is due to the defendant for his protection against another suit at the instance of the infant distributee, protracted, expensive and harassing; and, to the infant to secure his distributive share in the estate. We are not prepared to uphold the contract in this feature, as one entitled to a specific performance, if its validity were now open to question. But it would be manifestly unjust to leave the defendant exposed to a similar suit by the infant, or to deny to him the right to have judgment against the defendant for his portion of the trust estate."

No question was raised as to whether the appeal brought up the whole judgment, or only a part of it, and we do not deem it necessary to express any opinion in that respect.

The judgment, declaring the lien upon the land and directing a specific performance of the contract in respect to the mortgage, or in case of failure to do so, a sale of the property, must be reversed. To this end, let this opinion be certified to the Superior Court.

Error.                                              Reversed.